IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ROBERT C. HUMPLE,

      Plaintiff,

v.                                     Case No. 2:13-cv-14618

DAVID BALLARD, Warden,
and JEFFREY HILEWITZ,
former Correctional Officer,
individually and in their official capacities,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for initial proceedings and submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the defendants' Motion to Dismiss (ECF No. 47). For the reasons stated herein, it is respectfully **RECOMMENDED** that defendants' motion be **GRANTED IN PART** and **DENIED IN PART**.

## THE PLAINTIFF'S ALLEGATIONS

The plaintiff's claims are proceeding based upon the allegations made in three separate documents, which will collectively be referred to as the plaintiff's Amended Complaint. (ECF Nos. 6, 22 and 25). On June 17, 2013, the Clerk's Office received a document entitled "Notice of Intention/Complaint" (ECF No. 1), which was treated as a Complaint under 42 U.S.C. § 1983. The initial Complaint document named David

Ballard, the Warden at the Mount Olive Correctional Complex (hereinafter "MOCC"), and Jeffrey Hilewitz, a former Correctional Officer at MOCC, as the defendants.  The initial Complaint alleges that, on March 11, 2013, the plaintiff was assaulted by defendant Hilewitz, after having been placed in a mechanical restraint chair by Hilewitz, and other MOCC staff, including 10-12 John Does.  (ECF No. 1 at 2-3).  The plaintiff alleges that, after all other staff had left the room, defendant Hilewitz made discriminatory comments about the plaintiff's Hare Krishna religion and struck him three times about his head and face.  (*Id.* at 3.)  The Complaint alleges that this conduct violated his rights under the First, Eighth and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a)(1)-(2).  (*Id.* at 7-8).

A form Complaint (ECF No. 6) was received and docketed on July 9, 2013.  The form Complaint essentially repeats the allegations made in the initial Complaint concerning the alleged use of excessive force by defendant Hilewitz against the plaintiff while he was in the restraint chair.   The form Complaint supplanted the initial Complaint as the document upon which this matter was going to proceed.

Then, on September 24, 2013, still prior to service of process, the plaintiff filed a "Supplemental Complaint" (ECF No. 22), seeking to add an entirely new claim against defendant David Ballard alleging that the removal of lighting utilities from the plaintiff's cell, on or about June 9, 2013, deprived him of the ability to work on and study legal literature and has, consequently, denied him access to the courts.  (ECF No. 22 at 2-3). The "Supplemental Complaint" repeats the allegation that the inadequate lighting in his cell has denied him access to the courts in violation of his First Amendment rights, and

2

further alleges that the inadequate lighting is a form of cruel and unusual punishment, which violates his Eighth Amendment rights.  (*Id.* at 3-4).

On October 8, 2013, the plaintiff filed a Motion for Leave to File an Amended Complaint (ECF No. 25), in which he sought to supplement his "Supplemental Complaint" with an exhibit consisting of an inmate request form in which defendant David Ballard's subordinate, Captain Williams, allegedly stated, "I cannot move you until your cell light is repaired, which should be soon.  If your behavior is good until then, I will move you."  (*Id.* at 1 and 3 (Ex. O-1)).  The plaintiff asserts that this documentation demonstrates that he was still without adequate lighting on September 20, 2013.  (*Id.* at 1-2).  The plaintiff's document again makes the conclusory allegation that "David Ballard is the Warden of Mount Olive Correctional Complex.  He is legally responsible for the operation of Mount Olive Correctional Complex and for the welfare of all the inmates in that prison."  (*Id.* at 2).

On December 6, 2013, the undersigned entered an Order granting the plaintiff's Motion for Leave to Amend (ECF No. 25), and stating that the court would treat the documents in ECF Nos. 6, 22 and 25 collectively as the plaintiff's "Amended Complaint." (ECF No. 29).  Service of process was attempted by certified mail, return receipt requested.  Service was perfected on defendant Ballard on December 10, 2013. Defendant Hilewitz, who is no longer employed by the West Virginia Division of Corrections, was not successfully served; nevertheless, on December 23, 2013, defense counsel filed an Answer to the "Amended Complaint" (ECF Nos. 37 and 38) and subsequently filed a Motion to Dismiss on behalf of both defendants as addressed below.

## THE DEFENDANTS' MOTION TO DISMISS

On February 12, 2014, the defendants, by counsel, filed a Motion to Dismiss the plaintiff's Amended Complaint (ECF No. 47) and a Memorandum of Law in support thereof (ECF No. 48).   The motion asserts that the plaintiff's Amended Complaint should be dismissed because it fails to state a claim upon which relief can be granted and seeks damages from defendants who are immune from such liability.  (ECF No. 47). The undersigned will address each of the defendants' arguments for dismissal in turn.

## STANDARD OF REVIEW

The defendants' motion asserts that the plaintiff's Complaint fails to state a claim upon which relief can be granted against them, and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks

4

omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.

* * *

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct."  *Id.* at 678.

The defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

## ANALYSIS

### A.    Sufficiency of the Amended Complaint.

The defendants first assert that the plaintiff's Amended Complaint documents fail to sufficiently allege facts that would give rise to any plausible claim for relief.  Citing to the *Twombly* and *Iqbal* decisions discussed above, the defendants assert that the plaintiff's Amended Complaint "generally contains nothing more than legal conclusions, and any remaining factual allegations fail to state any plausible claim for relief."  (ECF No. 48 at 7).

The defendants have attached several exhibits to their Motion to Dismiss, consisting of incident reports and pictures of the plaintiff's cell, and have requested that the court treat the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  The defendants assert that those documents will demonstrate

that the defendants are definitively entitled to judgment as a matter of law on the plaintiff's Eighth Amendment claim.

The undersigned proposes that the presiding District Judge decline to consider the defendants' exhibits at the present time because consideration of the same is premature.   The purpose of a Motion to Dismiss is to test the sufficiency of the Complaint, and the facts stated in the complaint document(s) must be taken as true.

On February 19, 2014, the plaintiff filed a Response to the defendants' Motion to Dismiss (ECF No. 49).   The plaintiff's Response does not focus on the sufficiency of the allegations in his Amended Complaint; rather, it addresses the sufficiency of the evidence as addressed through several of the defendants' exhibits, which have been disregarded for the purposes of the pending Motion to Dismiss.

The undersigned will address the sufficiency of the allegations that form the basis of each of the plaintiff's claims for relief:

### Excessive force claims

Looking first at the alleged conduct of defendant Hilewitz, the defendants assert that the following allegation gives rise to no more than a *possible*, rather than a *plausible* Eighth Amendment claim [alterations and corrections made by the court]:

> [Defendant Hilewitz] approached [Plaintiff] and made [a] discriminating [comment] towards the Plaintiff as ("This is what you [retarded] Hare Krishnas get") then [Defendant Hilewitz] applied Excessive Force on [Plaintiff] by striking/punching Plaintiff in the face twice and once in the back of the head which left Plaintiff still strapped down with [a] busted mouth and [a] busted nose.

(ECF No. 6 at 8, ¶ 6).  The defendants further assert that "there is an obvious alternative explanation for the alleged use of force:  given the tumultuous atmosphere of the prison and the need to control the disruptive behavior of its inmates, including the Plaintiff, Defendant Hilewitz and/or other officers applied lawful force to control Plaintiff.

Indeed, this alternative is just as likely as the scenario proposed by Plaintiff, as on the date of the incident, Plaintiff was found causing a flood, kicking his door, making threats and disobeying orders." (ECF No. 48 at 7-8).

In the instant case, the plaintiff has alleged that, <u>after he was placed in a restraint chair</u>, defendant Hilewitz approached him, made a discriminating comment about the plaintiff's Hare Krishna religion, and then struck the plaintiff three times about the head and face, causing the plaintiff's busted mouth and nose. The undersigned proposes that the presiding District Judge **FIND** that these facts are sufficient to state a plausible violation of the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment against defendant Hilewitz.

The same cannot be said, however, for the plaintiff's attempt to state a claim under the Eighth Amendment against defendant David Ballard arising out of the alleged excessive force incident. While the plaintiff's Amended Complaint documents specifically state what defendant Hilewitz did, the Amended Complaint fails in its entirety to plead any specific allegations concerning the conduct of defendant Ballard in relation to the alleged use of force against the plaintiff on March 11, 2013. In fact, the only mention of defendant Ballard in the form Complaint (ECF No. 6) is that "Defendant David Ballard is responsible for all movement and actions of defendant J. Hilewitz was taken place [sic; that have taken place] in defendant David Ballard's prison Mount Olive Correctional Complex." (ECF No. 6 at 13). Thus, the plaintiff appears to be asserting his claim against defendant Ballard on the basis of *respondeat superior* or vicarious liability, which is not permissible under 42 U.S.C. § 1983. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978).

Nor has the plaintiff sufficiently stated a proper claim of supervisory liability against defendant Ballard. In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations. Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." 13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)). In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

1) The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

2) The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3) There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799. (ECF No. 18 at 5-6). However, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment. Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive. *Id.* at 838. (*Id.*)

8

The defendants' Memorandum of Law asserts that:

> In Plaintiff's vicarious liability claim against Defendant Ballard, there are again no factual allegations which raise a plausible claim for relief, but only a conclusory statement that "Defendant David Ballard is responsible for all movement and actions of [Defendant Hilewitz] at Mount Olive Correctional Complex." [ECF No. 1] at ¶ 36]. Indeed, Defendant Ballard is not mentioned anywhere else in the "Statement of Claim" section of Plaintiff's Complaint.

(ECF No. 48 at 8).

The plaintiff's Response to the defendants' Motion to Dismiss again conclusively asserts that "Plaintiff's claim against David Ballard for violation of the Eighth Amendment is supported with Warden David Ballard is legally responsible for all operations within in his prison." (ECF No. 49). He offers no additional factual support concerning defendant Ballard's conduct in relation to the alleged assault by defendant Hilewitz.

Because the plaintiff's Amended Complaint contains no specific allegations concerning the conduct of defendant Ballard, the plaintiff cannot successfully demonstrate any of these elements in order to state a plausible claim of supervisory liability against defendant Ballard.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint states a plausible claim under the Eighth Amendment concerning the alleged use of excessive force against the plaintiff by defendant Hilewitz, but fails to state a plausible Eighth Amendment claim against defendant Ballard.

### *Claims concerning inadequate lighting in cell*

The plaintiff's Amended Complaint also attempts to allege two separate claims against defendant Ballard arising out of the failure to remedy inadequate lighting in the

plaintiff's cell for many months while the plaintiff was incarcerated at MOCC.

Specifically, the plaintiff's Amended Complaint alleges as follows:

> On June 9th, of 2013, I plaintiff Robert C. Humple was housed on Quilliams 2, Pod 6, Cell No. 603 and on this date Defendant David Ballard was legally responsible for the operation of Mount Olive Correctional Complex Maintenance Department's action of removing I plaintiff's housing assignment's lighting utilities from plaintiff's cell block No. 603 which left plaintiff suffering with inadequate lighting and deprivation of adequate lighting which prevented plaintiff for deprivation - as the "right of access to the courts."  Under this right is based on the First, Fifth and Fourteenth Amendments to the Constitution.

> With only daylight plaintiff has such limited time to study legal literature and limited time to use his right to "petition the government for a redress of grievances" for which is being deprived of plaintiff due to inadequate lighting . . . . With only daylight plaintiff has such limited time to study legal literature and limited time to use his right under the Fifth and Fourteenth Amendments, plaintiff has the right to "due process of law."

> * * *

> The plaintiff has also suffered from a violation of the Eighth Amendment when defendant David Ballard cruelly punished Plaintiff by removing plaintiff's Cell No. 603 lighting utility which means inadequate lighting and deprivation of basic sanitation (utilities) is such deprivation that plaintiff has suffered from over three and a half (3 ½) months June 9th through September 23rd, of 2013 and more days to come) (Prisons must provide "reasonably adequate utilities" such as "adequate lighting!")

(ECF No. 22 at 3-4).  The plaintiff further alleges that defendant Ballard "continues to misuse/abuse his authority by failing to meet the requirements of cell block living conditions by refusing to comply with [Eighth Amendment] cruel and unusual punishments inflicted . . . ."  (*Id.* at 5).

On October 8, 2013, the plaintiff filed a "Supplemental Complaint" (ECF No. 25) in which he adds an allegation that "David Ballard's employee, Captain Williams stated: I cannot move you until your cell light is repaired, which should be soon.  If your

behavior is good until then, I'll move you." (*Id.* at 1).  The plaintiff seeks declaratory and injunctive relief and monetary damages.

The defendants' Motion to Dismiss (ECF No. 47) and Memorandum of Law in support thereof (ECF No. 48) similarly assert that these allegations are not sufficient to state a plausible claim upon which relief can be granted.  Their Memorandum of Law states in pertinent part:

> In Plaintiff's "Supplemental Complaint," discussing the alleged deprivation of light, Plaintiff again fails to meet the basic pleading requirements with respect to his claims of violation of the Eighth Amendment, violation of Title 95 of the West Virginia Code of State Rules, and violation of the First, Fifth and Fourteenth Amendments.  Plaintiff's statements in support of such claims are merely legal conclusions or else factual allegations which fail to raise a plausible claim for relief.  Accordingly, Plaintiff's entire Amended Complaint should be dismissed with prejudice.

(ECF No. 48 at 8).

The defendants note that the plaintiff heavily relies upon the decision in *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) in support of his claim that inadequate lighting in his cell violates his Eighth Amendment rights.  As described by the defendants in their Memorandum of Law:

> In *Gates*, several death row inmates of the Mississippi Department of Corrections ("the inmates") brought suit against officials of the Mississippi Department of Corrections (the "MDOC") alleging that certain conditions of confinement on death row violated the Eighth Amendment's prohibition against cruel and unusual punishment.  The Court agreed that "[t]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id.* at 332.  The *Gates* Court then reiterated the test used to evaluate whether prison conditions violate the Eighth Amendment's prohibition against cruel and unusual punishment:  "[a] prison official has violated the Eighth Amendment when he 1) shows a subjective deliberate indifference to 2)conditions posing a substantial risk of serious harm to the inmate." *Id.* at 333.

(ECF No. 48 at 15-16).

The defendants' Memorandum of Law then summarizes the conditions of confinement at issue in *Gates* and the trial court's rulings concerning the same, including a finding that "the lighting in the cells was grossly inadequate for the purpose of sanitation, personal hygiene, and reading, [and] that this condition also contributes to further mental health deterioration."  376 F.3d at 342.  (*Id.* at 16).  However, the defendants attempt to distinguish the ruling finding an Eighth Amendment violation in *Gates* from the instant case on the basis that, in *Gates*, the deprivation of light was significant because "it was part of a larger, combined effect, which collectively posed a substantial risk of harm to the inmates' health."  (*Id.* at 17).  The defendants' Memorandum of Law further states:

> Indeed, the [*Gates*] Court recognized the possibility of a "combined effect" when it described that "[c]onditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets."  *Id.* at 333 (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).
>
> * * *
>
> In the instant matter, there are a couple of important distinctions from *Gates*.  First, as Plaintiff acknowledges in his Supplemental Complaint, the Mount Olive Correctional Complex was aware of the lack of lighting in Plaintiff's cell and was planning on fixing it when able . . . .  Moreover, Plaintiff was only without lighting for a period of a few months.  Thus, unlike in *Gates*, where the MDOC had been promising to fix the inadequate lighting, and the inmates suffered from the same, for a number of years, here it cannot be fairly argued that Defendant Ballard has displayed deliberate indifference to Plaintiff's alleged lack of light.  Second, the *Gates* Court affirmed the injunction compelling the MDOC to upgrade the lighting on the basis that inadequate lighting, in combination with other inadequate conditions, posed a substantial risk of harm to the inmates.  However, in the instant matter, Plaintiff has stated no reason why the lack of lighting, by itself, poses a substantial risk of harm.

(ECF No. 48 at 17-18).

In the plaintiff's Response to the defendants' Motion to Dismiss, the plaintiff, again states in a conclusory manner that Warden Ballard is legally responsible for all operations in his prison, specifically addresses the deprivation of light claim as follows [spelling errors corrected by the court]:

> Once the light fixture was removed for an <u>excessive amount of time</u> which inadequate lighting is cruel and unusual punishment, which the lack of light posed a substantial risk of harm on Plaintiff once prison officials was incappitable [sic; incapable?] to have visual with Plaintiff due to darkness of the cell which uposed [?] darkness that plaintiff could barely see within in his cell block No. 603.

(ECF No. 49 at 3) [Emphasis in original].

The plaintiff's alleged circumstances of being without adequate lighting for a number of months is distinguishable from the conditions of confinement addressed in *Gates*. The plaintiff has not demonstrated that he suffered any actual injury as a result of the lack of light in his cell, and since he has been released from prison, he is not presently exposed to such a condition. The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's allegations in his Amended Complaint documents concerning the inadequate lighting in his cell fail to state a plausible Eighth Amendment claim against defendant David Ballard.

Moreover, to the extent that the plaintiff is alleging that the inadequate lighting in his cell has "denied him access to the courts," his Amended Complaint fails to allege any specific injury suffered in terms of any legal proceedings the plaintiff was pursuing while subjected to such conditions. As noted in the defendants' Memorandum of Law in support of their Motion to Dismiss, "for an inmate to make out a proper claim that he has been denied access to the courts, the inmate must allege an actual injury. *See McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001)." (ECF No. 48 at 19). In other words, the plaintiff must "demonstrate that the alleged shortcomings . . . hindered his

efforts to pursue a legal claim." *Id.* (ECF No. 48 at 20).  The defendants' Memorandum of Law further asserts:

> In the instant matter, though Plaintiff has alleged that the deprivation of light has impeded his right of access to the courts, Plaintiff has failed to allege any actual injury.  Plaintiff has merely made conclusory statements that he has "such limited time to study legal literature."  ECF No. 22 at ¶ 9.  Like the prisoner in *McBride*, Plaintiff has failed to specify which legal materials he was unable to study and how the time (and lighting) he could use to study legal literature was inadequate for his needs.  Indeed, even if the lack of lighting did hinder Plaintiff's ability to reach the courts, Plaintiff would be hard-pressed to argue that he has suffered any actual injury as he was able to successfully file the instant action, which the Defendants presently find themselves defending.  Moreover, whereas the prisoner in *McBride* alleged that his requests to obtain legal materials were generally denied, and yet his claim for violation of his right of access to the courts was still dismissed, here Plaintiff does not allege that he has been generally denied the ability to conduct research, only that he has been unable to do so at all hours of the day.  It follows, then, that Plaintiff's claim is similarly without merit.  Accordingly, Plaintiff's claim against Defendant Ballard seeking declaratory, injunctive and compensatory relief for violation of the First, Fifth and Fourteenth Amendments, as a result of the alleged deprivation of light, should be dismissed with prejudice.

(*Id.* at 20-21).

The plaintiff's Response to the defendants' Motion to Dismiss concerning the inadequate lighting claims makes a conclusory statement that plaintiff has a right to a safe cell or prison conditions, and emphasizes that he experienced inadequate lighting for six months and one day (June 9, 2013 to December 10, 2013).  (ECF No. 49 at 4). However, the plaintiff does not add any specific allegations concerning defendant Ballard's conduct in this regard or any additional support to demonstrate how defendant Ballard's conduct violated either the plaintiff's First Amendment right to access the courts or his due process rights under the Fifth and Fourteenth Amendments. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the

plaintiff's Amended Complaint fails to state any plausible claim against defendant David Ballard based upon the inadequate lighting in the plaintiff's cell.

### *The plaintiff's allegations concerning violation of state regulations*

The plaintiff's Amended Complaint further alleges that the alleged use of excessive force by defendant Hilewitz and defendant Ballard's failure to remedy the inadequate lighting in the plaintiff's cell violated certain provisions of the West Virginia State Code of Rules.  In particular, the plaintiff's initial Complaint alleges that the alleged use of force against him while he was placed in the restraint chair violated sections 11.24, 11.34, 11.35, 12.12, 15.8, 15.9 and 15.11 of Title 95 of the West Virginia Code of State Rules.  (ECF No. 6 at 13).  In his Supplemental Complaint (ECF No. 22 at 5-7), the plaintiff further alleges that the inadequate light in his cell violated sections 8.2, 8.9 and 8.11, and that defendant Ballard's failure to correct the misconduct and encouraging the continuation of the misconduct violated the plaintiff's rights under the Eighth Amendment.

The undersigned has already addressed the sufficiency of the plaintiff's allegations under the Eighth Amendment above.  As noted by the defendants in their Memorandum of Law in support of their Motion for Summary Judgment, "Plaintiff has failed to set forth this Court's jurisdiction over claims for violations of state regulations. Moreover, Plaintiff has not set forth a West Virginia statute or regulation which provides a private cause of action for violations of Title 95."  (ECF No. 48 at 13 and 19).

The plaintiff's Response to the defendants' Motion to Dismiss contends that:

Nowhere in this aforesaid Case No. 2:13-cv-14618 did Plaintiff make a claim against Defendant Hilewitz for violation of Title 95 of the West Virginia Code of State Rules; this claim was made individually and in Warden David Ballard's Defendant official capacities as [well as?] individually.

(ECF No. 49 at 3).

The undersigned proposes that the presiding District Judge **FIND** that, to the extent that the plaintiff is attempting to raise any independent claims for relief based upon violations of these state regulations, his Amended Complaint fails to state a plausible claim upon which relief may be granted.  As aptly noted by the defendants, the plaintiff has not stated any jurisdictional basis for the court to consider such claims and there is no private right of action afforded under the cited regulations.

### *The plaintiff's allegations concerning religious discrimination*

In his initial filing, the plaintiff alleged that the conduct of defendant Hilewitz in "treating the plaintiff poorly because of the plaintiff's religion as a Hare Krishna" violated the plaintiff's rights under the Fourteenth Amendment's Equal Protection Clause, the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  (ECF No. 1 at 7).  The plaintiff did not repeat these allegations in his Amended Complaint documents (ECF Nos. 6, 22 and 25).  Thus, the undersigned is unsure of whether the plaintiff has abandoned his claims based upon alleged religious discrimination, and those claims have not been addressed in the defendants' Motion to Dismiss and Memorandum of Law in support thereof.

Even if the plaintiff is still seeking to pursue such claims, his conclusory allegations that defendant Hilewitz's comment to the effect of "this is what you retarddit [sic; retarded] Hare Krishna's get" violated his rights under the First and Fourteenth Amendments and the RLUIPA, without more, is insufficient to state plausible claims under these federal constitutional and statutory provisions.  The plaintiff has simply used labels and conclusions, without providing enough facts upon which to base a

plausible claim against defendants Hilewitz or Ballard concerning the denial of his right to practice his religion.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a claim upon which relief may be granted under the First Amendment Free Exercise Clause, the Fourteenth Amendment Equal Protection Clause or the RLUIPA.

### B.    Qualified immunity.

Government officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. Id. If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. Id.

However, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that courts may decide to address whether the right is clearly established first. The Pearson Court noted that the doctrine of qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  555 U.S. at 230.

The defendants' Memorandum of Law asserts that both defendants are entitled to qualified immunity on the claims in the plaintiff's Amended Complaint.  Concerning the Eighth Amendment claim against defendant Hilewitz, the defendants' Memorandum of Law asserts:

> Looking at the first part of our qualified immunity analysis, even if the Court finds that Defendant Hilewitz used excessive force against Plaintiff in violation of the Eighth Amendment, Defendant Hilewitz may still be entitled to qualified immunity.  Indeed, "it is well settled that a defendant may be entitled to qualified immunity even where he has used excessive force."  *Henry v. Dinelle*, 929 F. Supp.2d 107, 123, 2013 U.S. Dist. LEXIS 32092, 2013 WL 936584 (N.N.N.Y. 2013).  Turning to the second part of the analysis, the Court must determine whether it would be clear to a reasonable officer that his conduct was unlawful in the situation being confronted.  Though Plaintiff claims that the use of force used by Defendant Hilewitz "was not applied in an effort to maintain or restore discipline but was used to maliciously and sadistically cause harm," ECF No. 6 at ¶ 34, it is important to remember that "in deciding whether a reasonable corrections officer in a defendants' situation would have known that his or her conduct violated a federal right, it is impermissible to consider the defendant's subjective state of mind – regardless of whether the defendant was acting in good faith, or was actually intending to harm the plaintiff."  *Henry*, 929 F. Supp.2d at 122.  Therefore, the seminal question in this matter is whether a reasonable corrections officer would have known it was clearly unlawful to use force against Plaintiff while the Plaintiff was in an "agitated" state, making threats and acting disobedient.  The qualified immunity defense permits an officer's mistaken belief that the use of force is lawful in this instance.  Thus, Defendant Hilewitz would not have been on notice that his use of force, even if it was excessive, was clearly unlawful.  For these reasons, Defendants are entitled to qualified immunity for the alleged use of excessive force in violation of the Eighth Amendment.

(ECF No. 48 at 10-11).

The defendants assert that the same analysis applies to the plaintiff's claims against defendant Ballard for alleged violations of the plaintiff's Eighth, First, Fifth and

Fourteenth Amendment rights resulting from the deprivation of light in his cell.  Their

Memorandum of Law states:

> First, with respect to Plaintiff's claim that the deprivation of light was a form of cruel and unusual punishment and thus a violation of the Eighth Amendment, the Court would have to find that a deprivation of a prisoner's artificial lighting for use at night is, by itself, a constitutional violation – these Defendants expressly deny that it is , and contend that Plaintiff would be hard-pressed to prove otherwise (discussed further below).  In addition, it cannot be fairly argued that a reasonable corrections officer clearly would have known such a deprivation to be a form of cruel and unusual punishment in violation of the Eighth Amendment.  Similarly, even if the deprivation of light did deny Plaintiff his "right of access to the courts" in violation of the First, Fifth and Fourteenth Amendments (again, Defendants expressly deny that it did, and will discuss further below), it cannot be fairly argued that a reasonable corrections officer clearly would have known such a simple deprivation to be a violation of such a significant constitutional right.  Accordingly, Defendant Ballard is entitled to qualified immunity for the alleged derivation of light in violation of the Eighth, First, Fifth and Fourteenth Amendments.

(*Id.* at 11).

Although correctional officers may be entitled to use some force to insure compliance with their directives and prison rules, they may only do so in proportion to those objectives and the threat that the inmate is posing.  As noted above, the facts alleged by the plaintiff, taken as true, are sufficient to permit a reasonable jury to find that defendant Hilewitz acted maliciously and sadistically to cause harm by punching the plaintiff three times about the face and head while he was restrained.  Furthermore, defendant Hilewitz would not be entitled to qualified immunity if the plaintiff can prove these facts because, on March 11, 2013, when the alleged assault of the plaintiff by defendant Hilewitz occurred, the law was clearly established under *Hudson v. McMillian*, 503 U.S. 1 (1992), *Whitley v. Albers*, 475 U.S. 312 (1986) and *Wilkins v. Gaddy*, 559 U.S. 34 (2010), that striking an inmate when it is unnecessary as a means of control can be cruel and unusual punishment.

However, at this stage of the proceedings, it is premature to determine whether defendant Hilewitz is entitled to qualified immunity because evidence concerning the factual circumstances surrounding the alleged assault has not been fully developed. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that defendant Hilewitz is not entitled to qualified immunity at this stage of the proceedings.

On the other hand, because the undersigned has proposed that the presiding District Judge find that the plaintiff's Amended Complaint fails to state any claim upon which relief can be granted with respect to the conduct of defendant Ballard, the undersigned further proposes that the presiding District Judge **FIND** that defendant Ballard is entitled to qualified immunity on all of the plaintiff's allegations against him, based upon the first prong of the *Saucier* analysis.

### C.    Absolute immunity of defendants in their official capacities.

The plaintiff has sued defendants Hilewitz and Ballard in both their individual and official capacities.  However, as noted by the defendants in their Memorandum of Law in support of their Motion to Dismiss (ECF No. 48 at12), the plaintiff's claims against the defendants in their official capacities cannot survive because, neither a state, nor its officials acting in their official capacities, are "persons" under the civil rights statutes.  In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.  We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.  The judgment of the Michigan Supreme Court is affirmed.  [Citations omitted].

20

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

The plaintiff's Response to the Motion to Dismiss does not specifically address this issue, which is of no matter because, in accordance with the authority discussed above, the defendants are absolutely immune from liability for damages in their official capacities.[1] Accordingly, to the extent that the plaintiff has attempted to sue the defendants in their official capacities for monetary damages, such claims must be dismissed.

**D.     The plaintiff's claims for declaratory and injunctive relief.**

The plaintiff also seeks certain forms of declaratory and injunctive relief in his Complaint. Even if such relief were available, however, the plaintiff's claims for declaratory or injunctive relief are now moot, due to the plaintiff's release from incarceration. The plaintiff was released from MOCC on or about March 25, 2014, and is presently living in the State of Virginia.

---

[1] Although the Eleventh Amendment does not prohibit claims for injunctive relief against state officials, as will be discussed below, the plaintiff's claims for injunctive relief in this matter are now moot.

The power of the federal courts to adjudicate claims turns on the existence of a case or controversy.  U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue."  *Taylor v. Riverside Regional Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in Taylor, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.")  For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's requests for declaratory and injunctive are moot, and must be dismissed.

### E.    The plaintiff's Declaration for Entry of Default.

Although not docketed as a motion, on December 27, 2014, the plaintiff filed a "Declaration for Entry of Default" (ECF No. 39).  In this declaration, the plaintiff asserts that the defendants were served with process by certified mail, return receipt requested, on December 6, 2013.  (*Id.* at 1).  The plaintiff's declaration further asserts that the defendants failed to answer or otherwise defend this matter within 20 days of service.  (*Id.* at 1-2).

However, according to the return receipts filed on the docket sheet, although the summonses were <u>issued</u> and mailed on December 6, 2013, the United States Postal Service website indicated that defendant David Ballard did not sign for receipt of his certified mail until December 10, 2013, and defendant Jeffrey Hilewitz's certified mail was returned unexecuted. Therefore, pursuant to Rule 12(a)(1)(A)(i), defendant Ballard's Answer was due 21 days later, or by December 31, 2013. The defendants filed an Answer to the Complaint and Supplemental Complaint on December 23, 2013. (ECF Nos. 37 and 38). Thus, the undersigned proposes that the presiding District Judge **FIND** that no defendant is in default and entry of default or a default judgment is not warranted.

## **RECOMMENDATION**

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the defendants' Motion to Dismiss (ECF No. 47) with regard to the plaintiff's Eighth Amendment excessive force claim against defendant Jeffrey Hilewitz in his individual capacity, but **GRANT** the Motion to Dismiss with regard to all other claims alleged in the plaintiff's Amended Complaint, including all claims against defendant David Ballard.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed

23

Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

July 31, 2014

Dwane L. Tinsley
United States Magistrate Judge

24